UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD AVERY McPETERS, <br><br> Petitioner, <br><br> vs. <br><br> ROBERT L. AYERS, JR., as Warden of San Quentin State Prison, <br><br> Respondent. | Case No. 1:95-CV-05108-LJO <br><br> DEATH PENALTY CASE <br><br> ORDER SETTING STATUS CONFERENCE TO DISCUSS SETTLEMENT <br><br> DATE: March 6, 2007 <br> TIME: 8:45 a.m. <br> COURTROOM EIGHT |

Petitioner Ronald Avery McPeters ("McPeters") was sentenced to death for the August 6, 1984 robbery and murder of Linda Pasnick in Fresno, California. An evidentiary hearing was ordered on October 8, 2004 to permit further development of evidence pertaining to McPeters' mental state at the time of the crime and trial. Throughout 2005 and 2006, the parties have been developing evidence in a cooperative effort. On March 1, 2006, McPeters filed 36 supplemental exhibits comprised of relevant logs from the Fresno County Jail, reports from San Quentin State Prison, declarations from family members and acquaintances, declarations from correctional staff involved in treating McPeters, and declarations from mental health experts. On February 15, 2007, Respondent Robert L. Ayers, Jr., as Warden of San Quentin State Prison (the "Warden") filed a declaration of his expert witnesses, Reese T. Jones, M.D.

Dr. Jones's declaration in ambiguous as to McPeters' mental state at the time of the crime and trial. He states McPeters' "odd and unusual" behavior prior to the shooting death of Ms. Pasnick "could be a consequence of PCP or other drug use or could be a consequence of a progressive mental illness, or, in [his] opinion, a likely consequence of both those considerations." Jones Decl., ¶ 5. At the time

of the crime, however, Dr. Jones states that "McPeters' behavior during the shooting appeared to be methodical and goal directed." *Id.*, ¶ 6. Specifically with respect to PCP intoxication, Dr. Jones opines that "the mere presence of PCP and cannabinoids metabolites at concentrations measured in Mr. McPeters' blood does not and cannot establish his level of intoxication or degree of behavior change around the time Linda Pasnick was killed." *Id.*, ¶ 11. Continuing, Dr. Jones states: "Nor did the initial negative blood analysis for the presence of illicit drugs establish that Mr. McPeters did not use illicit drugs around the time of Linda Pasnick's murder." *Id.* Regarding McPeters' schizophrenia, he states:

> My opinion is that during his late teens, Mr. McPeters began to experience, and demonstrate behavioral evidence of the prodrome phase of what subsequently, with the passage of time, would clearly, and unequivocally, become schizophrenia. . . . His gradually increasing use of illicit drugs beginning during adolescence and his early 20s, particular his choice of phencyclidine and marijuana worsened his mental condition during those earlier stages of schizophrenia. . . . Evidence of him suffering from a schizophrenia syndrome was abundant in the jail and medical records while he was in the Fresno County Jail during the pretrial period. Descriptions of behavior and symptoms typical of chronic schizophrenia are throughout his San Quentin prison medical records including the most recent ones covering 2005. . . . [I]t would be almost impossible for observers, even experienced professional interviewers . . . to reliably distinguish between behaviors and actions that were a consequence of the naturally occurring, gradually developing process (schizophrenia) and various acute behavioral and mental effects that were a consequence of Mr. McPeters' concurrent PCP, marijuana and, to a lesser degree, his alcohol use.

*Id.*, ¶ 14. He then opines that McPeters' "mental processes and behavior were not normal or unimpaired around the time he . . . murdered Linda Pasnick." *Id.*, ¶ 15. This statement is confusing and internally conflicted. His next opinion, however, is clear that "individuals suffering from mental effects of schizophrenia and/or PCP or cannabis intoxication, even though experiencing some degree of disordered thinking, can remain capable of forming intent, planning carrying out and appreciating the consequences of complex behavior." *Id.* Dr. Jones also believes that because McPeters was intermittently treated with anti-psychotic medications when his symptoms became pronounced during pre-trial and trial proceedings, he "was probably sufficiently mentally competent to understand the nature and purpose of the proceedings . . . and able to work with his attorney in his defense in a rational manner." *Id.*, ¶ 16.

Notwithstanding Dr. Jones's opinions that McPeters was observed to act methodically and in a goal-oriented manner during the actual shooting of Ms. Pasnick, he acknowledges that by the time of the crime, McPeters suffered from organic schizophrenia, exacerbated by PCP use. He further opines that McPeters currently suffers from chronic schizophrenia at San Quentin.

Dr. Jones's opinion about McPeters' current mental state is amply corroborated by the record and the evidence most recently filed by McPeters. McPeters is described as extremely disoriented, and substantially non-communicative. In light of the authorized evidentiary hearing, the Court is concerned about McPeters' ability to communicate with this appointed counsel to assist in the presentation of evidence. Under *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 819 (9th Cir. 2003), "where an incompetent capital habeas petitioner raises claims that could potentially benefit from his ability to communicate rationally, refusing to stay proceedings pending restoration of competence denies him his statutory right to assistance of counsel, whether or not counsel can identify with precision the information sought." In *Gates*, a principal contention was that Gates was incompetent to stand trial and that his trial attorneys were constitutionally ineffective for failing to pursue a competency hearing. The court held, "[i]f Gates were competent today, he could provide information to bolster that claim." *Id*. at 818. Specifically, Gates could provide testimony "about his former state of incompetence." and "could also direct his [habeas] counsel to circumstantial evidence of his incompetence at the time [of trial]." *Id*. Further, "Gates's private knowledge could also be relevant to his trial counsel's deficiency" because whether "trial counsel were constitutionally ineffective may depend on their interactions with Gates." *Id*. Similarly on the issue of ineffective counsel for failure to present mitigating evidence at the trial penalty phase, "if Gates were competent [presently], he could support his claim" because he is "better positioned than anyone to identify aspects of his personal history that should have been, but were not elicited." *Id*. Considerations with respect to McPeters' mental state are indistinguishable from those presented in *Gates*.

The evidence demonstrating that McPeters' current, severe mental impairments will not improve further raises the issue of his amenability to execution under *Ford v. Wainwright*, 477 U.S. 399 (1986), even if habeas relief were to be denied. The principle holding from *Ford* is stated in the concurring opinion of Justice Powell, namely that the Eighth Amendment bars execution of "those who are unaware of the punishment they are about to suffer and why they are to suffer it." *Id*. at 422, *approved by Penry v. Lynaugh*, 492 U.S. 302, 333 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

If McPeters cannot realistically proceed with the authorized evidentiary hearing due to his impaired mental state, and it is unlikely he will be executed because his mental condition will not improve, continued litigation of his claims will benefit neither party, lead to unnecessary expense, and needlessly expend scarce judicial resources. Settlement should be considered by the parties as a viable option. The telephonic status conference herein scheduled is for the purpose of exploring a non-adjudicative resolution. The Court will facilitate further settlement discussions through a neutral third party if the parties wish to pursue this option. The telephonic conference is to be initiated and arranged by McPeters' counsel. The Warden's counsel is directed to involve participants in the conference with actual settlement authority.

IT IS SO ORDERED.

Dated:   February 22, 2007

/s/ Lawrence J. O'Neill
Lawrence J. O'Neill
United States District Judge