GARY D. SOWARDS (State Bar No. 69426)
MARGO HUNTER (State Bar No. 184157)
HABEAS CORPUS RESOURCE CENTER
303 Second Street, Suite 400 South
San Francisco, California 94107
Telephone: (415) 348-3800
Facsimile:  (415) 348-3873
Email:    gsowards@hcrc.ca.gov
          mhunter@hcrc.ca.gov
          docketing@hcrc.ca.gov

Attorneys for Petitioner, Ronald Avery McPeters


KAMALA HARRIS
Attorney General of the State of California
RONALD S. MATTHIAS
Senior Assistant Attorney General
KENNETH N. SOKOLER
Supervising Deputy Attorney General
TAMI M. KRENZIN
Deputy Attorney General
1300 I Street, Suite 125
Post Office Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 445-2394
Facsimile: (916) 324-2960
Email: tami.krenzin@doj.ca.gov

Attorneys for Respondent, Ron Davis

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD AVERY McPETERS,<br><br>            Petitioner,<br><br>      v.<br><br>RON DAVIS, Warden of California State Prison at San Quentin,<br><br><br>            Respondent. | Case No.  1:95-CV-05108 DAD-SAB<br><br>DEATH PENALTY CASE<br><br>PARTIES' JOINT REQUEST TO VACATE EVIDENTIARY HEARING SCHEDULE PENDING DISPOSITION OF STATE PETITION |

The parties jointly request the Court to vacate the evidentiary hearing schedule set forth in the

Court's ORDER (1) CONTINUING EVIDENTIARY HEARING, (2) MODIFYING SCHEDULE

1

Parties' Joint Request to Vacate
Evidentiary Hearing Schedule Pending Resolution of
State Petition 1:95-CV-05108 DAD-SAB

FOR PRE-HEARING EVENTS, and (3) DIRECTING PARTIES TO FILE STATUS REPORTS (ECF No. 301, filed 6/11/15) ("Scheduling Order") pending final disposition of the pending state petition for writ of habeas corpus by the California Supreme Court; direct Petitioner to file a notice and status report of any decision by the California Supreme Court within fifteen (15) days of issuance; and require that counsel for Petitioner shall file status reports, apprising this Court of any other developments in the state habeas proceedings.

On several occasions, this Court has assisted the parties to explore a resolution of this case that avoids the expenditure of the resources necessary to litigate an evidentiary hearing.  Following an informal status conference conducted by the Court on January 16, 2015, the parties met and conferred, and thereafter agreed to an evaluation of Petitioner by the parties' mental health experts to determine Petitioner's competency to be executed within the meaning of *Ford v. Wainwright*, 477 U.S. 399 (1986).  *See* Parties' Joint Request to Modify Order Continuing Evidentiary Hearing and Scheduling Evidentiary Hearing (ECF No. 293, filed 2/20/15).

On June 5, 2015, following the evaluations by the parties' experts, and pursuant to the parties' agreement, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court (California Supreme Court Case No. S226918) alleging his incompetency to be executed under *Ford* (Claim One).   The state petition also alleged, as Claims Two and Three, entitlement to relief for false evidence under California Penal Code § 1473(e)(1).

On June 9, 2015, the California Supreme Court requested Respondent to file an informal response to the petition pursuant to rule 8.385(b) of the California Rules of Court.

On June 11, 2015, after reviewing the parties' joint status report (ECF No. 299, filed 6/05/15), and the state petition for writ of habeas corpus, this Court further modified its January 16, 2015 scheduling order for continued evidentiary hearing (ECF No. 292), as modified (ECF Nos. 294, 296), to order, inter alia:

1.  The  evidentiary hearing scheduled for September 10, 2015 at  9:00 a.m. was continued to June 21, 2016;

2.  The deadline for the parties to provide Rule 26(a)(2) expert testimony and reports, and lay

Parties' Joint Request to Vacate
Evidentiary Hearing Schedule Pending Resolution of
State Petition 1:95-CV-05108 DAD-SAB

witness lists, and to request Petitioner's attendance at hearing was continued from June 26, 2015 to March 31, 2016;

3. The deadline for disclosure of rebuttal expert witness testimony and related reports, and filing of discovery motions was continued from July 12, 2015 to May 6, 2016;

4. The deadline for the parties to serve the final witness and exhibit lists pursuant to Rule 26(a)(3), and to file copies of exhibits not previously filed in this matter was continued from August 21, 2015 to May 27, 2016;

5. The deadline for the parties to deliver exhibit binders was continued from August 28, 2015 to June 3, 2016; and

6. The deadline for filing in limine motions, supplemental joint pre-hearing statement and proposed findings of fact and conclusions of law was continued from September 3, 2015 to June 10, 2016.

ECF No. 301, filed 6/11/15, at 2.

On September 21, 2015, Respondent filed an Informal Response to the state petition, a copy of which is submitted herewith as Appendix 1 to this Motion. With respect to Claim One, Respondent agreed that Petitioner has alleged a prima facie case that he is, and will always be, incompetent to be executed; and further stated that there is no need for an evidentiary hearing because Respondent has no evidence contradicting Petitioner's showing. *See* Appendix 1 at 2. Respondent therefore requested that the California Supreme Court issue an order to show cause and determine Petitioner's entitlement to relief pursuant to *Ford v. Wainwright*, 477 U.S. 399 (1986), and the record before it. Appendix 1 at 3.

With respect to Claims Two and Three, the false evidence claims, Respondent asserted that the claims are procedurally barred and meritless. Appendix 1 at 3.

On January 8, 2016, Petitioner filed a Reply to the Informal Response. A copy of the Reply to the Informal Response is submitted herewith as Appendix 2 to this Motion.

The state habeas petition is currently pending before the California Supreme Court. Although the parties do not presume to predict the manner in which the California Supreme Court will resolve

3

Parties' Joint Request to Vacate
Evidentiary Hearing Schedule Pending Resolution of
State Petition 1:95-CV-05108 DAD-SAB

the matter, it appears extremely unlikely to counsel that a final disposition will be reached before the expiration of many, if not all of the deadlines in this Court's Scheduling Order.  If, for example, the California Supreme Court concurs in Respondent's assessment that Petitioner has established his permanent incompetence to be executed, and decides to afford the issue merits review, the State Supreme Court will issue an order to show cause, consider the parties' formal briefing and decide the matter in a reasoned opinion.  *See People v. Duvall*, 9 Cal. 4th 464, 474-479 (1995); *In re Wilson*, 3 Cal. 4th 945, 949, 955-956 (1992).  It is also the case that the California Supreme Court's resolution of the matter ultimately could affect the scope of any facts and issues that remain in dispute before this Court.  In the meantime, the deadlines established by this Court's Scheduling Order, which require counsel to complete significant amounts of work in preparation for the evidentiary hearing, are imminent; e.g., the requirement for the parties to provide Rule 26(a)(2) expert testimony and reports, and lay witness lists by March 31 2016.  ECF No. 301, at 2.

Accordingly, in the interests of judicial economy and efficient use of resources, the parties request the Court to vacate the June 21, 2016, evidentiary hearing date, and attendant schedule for prehearing events, set forth in the current Scheduling Order, pending the resolution of Petitioner's state habeas corpus petition by the California Supreme Court.


Dated: March 11, 2016                        Respectfully submitted,

                                             HABEAS CORPUS RESOURCE CENTER
                                             GARY D. SOWARDS
                                             MARGO HUNTER

                                    By:      */S/ Gary D. Sowards*
                                             GARY D. SOWARDS
                                             Attorney for Petitioner Ronald A. McPeters

Parties' Joint Request to Vacate
Evidentiary Hearing Schedule Pending Resolution of
State Petition 1:95-CV-05108 DAD-SAB

KAMALA HARRIS,
Attorney General of the State of California
RONALD S. MATTHIAS
Senior Assistant Attorney General
KENNETH N. SOKOLER
Supervising Deputy Attorney General
TAMI M. KRENZIN,
Deputy Attorney General


By:      */S/ Tami M. Krenzin*
TAMI M. KRENZIN
Attorneys for Respondent, Ron Davis

Parties' Joint Request to Vacate
Evidentiary Hearing Schedule Pending Resolution of
State Petition 1:95-CV-05108 DAD-SAB

**Appendix 1**

# In the Supreme Court of the State of California

In re

**RONALD AVERY McPETERS,**

**On Habeas Corpus.**

**CAPITAL CASE**

Case No. S226918

Fresno County Superior Court Case No. 318047-8
James A. Ardaiz, Judge

## INFORMAL RESPONSE TO SECOND
## PETITION FOR WRIT OF HABEAS CORPUS

KAMALA D. HARRIS
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
MICHAEL P. FARRELL
Senior Assistant Attorney General
KENNETH N. SOKOLER
Supervising Deputy Attorney General
TAMI M. KRENZIN
Deputy Attorney General
State Bar No. 183925
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 445-2394
 Fax: (916) 324-2960
 Email: Tami.Krenzin@doj.ca.gov
*Attorneys for Respondent and Appellant*

## TABLE OF CONTENTS

Page

Statement of the Case ................................................................... 1

Statement of Facts ....................................................................... 2

Introduction ................................................................................. 2

Argument ..................................................................................... 3

    I.    Because the evidence McPeters has proffered in support of his incompetency claim demonstrates that his mental condition will not improve, that claim is best resolved now ................................................................ 3

    II.   McPeters's false evidence claims are procedurally barred and are meritless in any event ................................... 7

        A.    The false evidence claims relating to guilt are procedurally barred ..................................................... 8

             1.    The claims are successive ................................ 8

             2.    The claims are untimely ................................. 11

        B.    The false evidence claims relating to guilt are meritless .................................................................. 11

        C.    The false evidence claim relating to the penalty phase is meritless ................................................... 12

             1.    Dr. Fort's repudiation is not credible ............ 12

             2.    Dr. Fort's repudiation is not material to the death sentence ......................................... 16

Conclusion ................................................................................. 18

## TABLE OF AUTHORITIES

**Page**

CASES

*Caritativo v. Teets*
(1956) 47 Cal.2d 304 ............................................................................. 5

*Ford v. Wainwright*
(1986) 477 U.S. 399 ..................................................................... *passim*

*In re Clark*
(1993) 5 Cal.4th 750 ............................................................................. 9

*In re Morgan*
(2010) 50 Cal.4th 932 ........................................................................... 7

*In re Phyle*
(1947) 30 Cal.2d 838 ........................................................................ 3, 6

*In re Richards*
(2012) 55 Cal.4th 948 ......................................................................... 16

*In re Robbins*
(1998) 18 Cal.4th 770 ......................................................................... 11

*Keeney v. Tamayo-Reyes*
(1992) 504 U.S. 1 ................................................................................. 6

*McCracken v. Teets*
(1953) 41 Cal.2d 648 ............................................................................ 5

*Panetti v. Quarterman*
(2007) 551 U.S. 930 .............................................................................. 5

*People v. Kelly*
(1992) 1 Cal.4th 495 ......................................................................... 3, 5

*People v. Leonard*
(2007) 40 Cal.4th 1370 ...................................................................... 4, 5

*People v. McPeters*
(1992) 2 Cal.4th 1148 ................................................................. *passim*

## TABLE OF AUTHORITIES
### (continued)

Page

*People v. Riley*
(1951) 37 Cal.2d 510 ................................................................. 5

*People v. Sloper*
(1926) 198 Cal. 601 ............................................................. 3, 5

*Rohan ex rel. Gates v. Woodford*
(9th Cir. 2003) 334 F.3d 803 .................................................. 1

*Ryan v. Gonzalez*
(2013) 133 S.Ct. 696 ............................................................. 1

*Tompkins v. Secretary, Dept. of Corrections*
(11th Cir. 2009) 557 F.3d 1257 ............................................ 6

STATUTES

Penal Code
§ 1367 ............................................................................... 3
§ 1368 ............................................................................... 9
§ 1473(b)(1) ................................................................. 9, 16
§ 1473(e)(1) ............................................................. 8, 9, 10
§ 1476 ............................................................................... 7
§ 3700 ........................................................................... 5, 7
§ 3700.5 ......................................................................... 4, 6
§ 3701 ........................................................................... 4, 5

OTHER AUTHORITIES

6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012)
Criminal Judgment, § 181 ..................................................... 3

The district court continued the evidentiary hearing to allow McPeters to return to this Court to present his claim that he is permanently incompetent to be executed.

## STATEMENT OF FACTS

The facts are summarized by this Court in *People v. McPeters* (1992) 2 Cal.4th 1148, 1168.

## INTRODUCTION

McPeters is a death-sentenced prisoner who has remained confined since he was apprehended for committing capital murder in 1984. In his second petition for writ of habeas corpus (S226918, filed June 5, 2015), he seeks relief on three grounds, only one of which should command this Court's enduring attention: He claims that he "is ineligible for the death penalty, pursuant to *Ford v. Wainwright*," the decision of the Supreme Court of the United States that bars the execution of anyone "whose mental illness prevents him from comprehending the reasons for the penalty or its implications." (Pet. at pp. 16-26, citing *Ford v. Wainwright* (1986) 477 U.S. 399, 416-418.)

McPeters gives little serious attention to whether his *Ford* claim is cognizable in these habeas proceedings. He suggests that the statutory provisions in place in California for resolving *Ford* claims are constitutionally infirm, and thus inadequate; accordingly, he insists habeas is his "only remedy available . . . to address the [*Ford*] issue." (Pet. at pp. 23-24.) McPeters's attacks on California law are without merit. As we shall explain, however, the unusual circumstances of this case provide a compelling argument for reaching and resolving McPeters's *Ford* claim sooner—on habeas—rather than later. We therefore urge the Court to employ these proceedings to address McPeters's *Ford* claim on the merits.

As we shall also explain, the evidentiary proffer McPeters has submitted with his petition is more than ample to establish that he is, and—most importantly for purposes of assessing the cognizability of his claim—that he *will always remain*, ineligible for execution under the rule set forth in *Ford*.  We therefore agree that an order to show cause should issue on claim 1.  Moreover, because the People at this point know with certainty that we have at our disposal no evidence with which we might contest McPeters's showing, we are prepared both to waive our right to confront McPeters's proof at an evidentiary hearing and to stipulate that this Court may resolve all factual issues underlying claim 1 on the basis of the undisputed evidentiary proffers reflected in McPeters's exhibits 17, 18, and 19.

By contrast, McPeters's remaining claims are both procedurally barred and meritless, and should be summarily denied on that account.

## ARGUMENT

I.   **BECAUSE THE EVIDENCE MCPETERS HAS PROFFERED IN SUPPORT OF HIS INCOMPETENCY CLAIM DEMONSTRATES THAT HIS MENTAL CONDITION *WILL NOT IMPROVE*, THAT CLAIM IS BEST RESOLVED NOW**

"A strong public policy dating from the early common law prohibits the execution of an insane person." (6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Judgment, § 181, p. 223.)  California has long embraced that policy.  (See, e.g., *In re Phyle* (1947) 30 Cal.2d 838, 840, quoting former Pen. Code, § 1367 ["A person cannot be . . . punished for a public offense while he is insane"]; see also *People v. Sloper* (1926) 198 Cal. 601, 606.)  The prohibition on executing an insane person is now recognized to be of constitutional force.  (*Ford v. Wainwright* (1992) 477 U.S. 399 [cited in *People v. Kelly* (1992) 1 Cal.4th 495, 544]; see also

*People v. Leonard* (2007) 40 Cal.4th 1370, 1430 ["[E]xecution of the insane is prohibited by the federal Constitution and by California law"]).

Penal Code section 3700.5 *et seq*. sets forth procedures for determining a condemned prisoner's competency to be executed. Under these procedures, an investigation into the prisoner's competency is triggered by the setting of an execution date (§ 3700.5) and, if the Warden finds "good cause" to believe the prisoner might be incompetent, the question is resolved in a jury trial (§ 3701).

McPeters notes that the statutory scheme "does not explicitly provide for a mechanism for an inmate to initiate an inquiry into his competence to be executed" (Pet. at p. 4), and he suggests that, for that reason, the scheme "does not . . . comport with the procedure mandated by the Supreme Court [in *Ford*]" (Pet. at p. 23). McPeters, however, misreads *Ford*, which establishes no requirement for the "explicit provision" of anything; rather, *Ford* found flaw with a procedure then in use in Florida because it "*preclude[d]* the prisoner from presenting or his counsel from presenting material relevant to his sanity" and seemingly "bar[red] consideration of that material by the factfinder." (*Ford, supra*, 477 U.S. at p. 414, emphasis added.) California law neither "precludes" a prisoner or his counsel from presenting nor "bars" the Warden from considering *anything*. At any rate, the Warden's impression that there is, or is not, "good reason to believe" a prisoner might be insane (Pen. Code, § 3701) does not *resolve* the question (compare *Ford*, at p. 416 ["Perhaps the most striking defect in [Florida's] procedures . . . is the State's placement of the decision wholly within the executive branch"]), and the due process requirements attendant to the determination are not even triggered under *Ford* until *after* the prisoner first makes a "substantial threshold showing of insanity." (*Id*. at p. 426.) McPeters suggests no basis for concluding that the "good reason" trigger provided in section 3701 does not comport with the "substantial threshold"

4

standard announced in *Ford*, and history confirms that California's procedures operate in a manner that easily surpasses this constitutional minimum.  (See *People v. Riley* (1951) 37 Cal.2d 510, 512 [information that defendant merely "became somewhat uncooperative and uncommunicative . . . created some doubt in the warden's mind as to defendant's sanity"]; *People v. Sloper, supra*, 198 Cal. at p. 608 ["[I]t must be assumed that the warden of the state prison will do his full duty to the end that the question of the prisoner's sanity may be *judicially* determined" (emphasis added)].)[1]

Though constitutional, section 3700 *et seq.* contemplates only those inquiries into competency as are taken *when execution is imminent*.  This focus is understandable because *Ford*-based incompetency claims, as a general matter, are not ripe until then.  (See *Panetti v. Quarterman* (2007) 551 U.S. 930, 946; see also *Kelly, supra*, 1 Cal.4th at p. 545 fn. 11 [sanity not at issue before execution date is set]; *People v. Leonard, supra,* 40 Cal.4th at p. 1430 ["The question whether a defendant is mentally

---

[1] Any prisoner who believes that the Warden, while acting pursuant to section 3701, has actually refused to receive or consider any information relevant to the "good-reason-to-believe" question, or refused, in the face of information sufficient to meet *Ford*'s "substantial threshold" standard, to initiate the process that culminates in a jury trial on sanity, may pursue whatever recourse he thinks appropriate.  And he may urge that any impediments to those efforts that he perceives to exist under pre-*Ford* interpretations of California law, be removed in light of *Ford*.  (See generally *McCracken v. Teets* (1953) 41 Cal.2d 648, 650 ["We have determined under the circumstances to deny the [Warden's] motion to dismiss the appeal" from the judgment denying petition for mandate to compel judicial inquiry into sanity]; but see *Caritativo v. Teets* (1956) 47 Cal.2d 304, 306-307 [granting motion to dismiss appeal in similar context, finding no requirement that the Warden's determination be judicially reviewable].)  But until he makes and fails in that effort, he cannot be heard to complain, much less would he be able to demonstrate, that section 3700 *et seq.* is unconstitutional.

competent to be executed is not determined until the defendant's execution date has been set" (citing Pen. Code, § 3700.5)].) That is so "because mental conditions of prisoners vary over time." (*Tompkins v. Secretary, Dept. of Corrections* (11th Cir. 2009) 557 F.3d 1257, 1260.)

Some mental conditions, however, do *not* vary over time. Or, more to the point, some mental conditions cannot *improve* over time. When a condemned prisoner suffers from a condition of that variety, and the prisoner can make a substantial showing of incompetency on that account under *Ford*, the claim is "ripe"—not as a matter of federal constitutional law, but for all other practical purposes. Indeed, compelling reasons exist for reaching a claim of "permanent incompetence" sooner rather than later, for if a prisoner can never be executed under *Ford*, then all other pending challenges to the death judgment are moot, and any continuing judicial inquiry into the validity of those other challenges would be pointless.[2] Accordingly, in the interest of promoting judicial efficiency and finality, we urge that the Court deem cognizable in this proceeding McPeters's claim of permanent incompetence.[3]

_____

[2] And the appropriate forum for resolving any claim of *Ford* incompetence, permanent or otherwise, is state court. "The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings. This is fully consistent with, and gives meaning to, the requirement of exhaustion." (*Keeney v. Tamayo-Reyes* (1992) 504 U.S. 1, 9.)

[3] Because "[s]ections 3700-3704 of the Penal Code provide for the adjudication, *not of some continuing status*, but only of the question whether the defendant is sane *at the time of the hearing initiated by the warden*" (*In re Phyle, supra,* 30 Cal.2d at p. 849), this habeas action— which focuses exquisitely on McPeters's "continuing status" as an execution-eligible prisoner, and without regard to any action by the Warden—is a proceeding apart from, and thus in no manner in tension

(continued...)

6

We further note that in 2007, both parties' experts agreed that McPeters suffered from schizophrenia, and his severe cognitive impairment would not change. (Pet., Exhs. 7, 8.) Moreover, all the experts agree that McPeters is currently incompetent to be executed—he is unaware of his death sentence and the reason for it—and that there is no reason to believe his impaired mental functioning will have any significant future improvement. (Pet., Exhs. 17-19.)

Based on the medical evidence, McPeters has established a prima facie case that he is, and will always be, incompetent to be executed. There is no need for an evidentiary hearing because the People have no further evidence to offer or develop that might contradict McPeters's showing. The People submit that this Court should issue and order to show cause and determine McPeters's entitlement to relief under *Ford* on the record before it.

## II. McPeters's False Evidence Claims are Procedurally Barred and are Meritless in any Event

McPeters raises false evidence claims in his petition, arguing violations of his constitutional rights. But these claims are not new—McPeters raised the claims (with the same evidence) on state habeas decades ago, and this Court rejected those claims. Now, McPeters is trying

---

(...continued)

with, the statutory scheme. Alternatively, this Court could establish its authority to consider McPeters's claim of permanent incompetence on habeas by forging an "exception" to section 3700 *et seq*. We would not lightly recommend such a course, and for the reasons noted we do not think it is necessary; we merely acknowledge its availability. (See *In re Morgan* (2010) 50 Cal.4th 932, 940 [creating, over the People's objection and for the sole purpose of defeating the natural operation of the statute of limitations applicable to federal habeas corpus petitions, an "exception" to Penal Code section 1476's explicit command that state habeas petitions be promptly resolved].)

to take another stab at these claims by citing to the recent amendment to
Penal Code section 1473(e)(1), providing that false evidence includes
expert opinion that the expert has repudiated or that has been undermined
"by later scientific research or technological advances." (Pen. Code,
§ 1473(e)(1).)  McPeters argues the recent statutory amendment constitutes
a change in the law substantially affecting his rights, entitling him to further
consideration of, and relief based on, the prosecution's presentation of
"false evidence," including the expert opinion of Dr. Joel Fort, which has
been repudiated.  McPeters's claim as it relates to Dr. Fort's repudiation is
the only false evidence claim that is not procedurally barred.  But the claim
is meritless because Dr. Fort's alleged repudiation of his penalty phase
testimony is not credible and not material to the death sentence.

### A.    The False Evidence Claims Relating to Guilt are Procedurally Barred

In claim two, McPeters raises constitutional challenges to his
conviction and sentence that center around the prosecutor's alleged use of
false and misleading evidence concerning McPeters's blood testing and
toxicology results.  But McPeters raised these claims (with the same
supporting evidence) decades ago, and this Court rejected the claims.  (*In re
McPeters*, Case No. S025418.)  The 2015 amendment to the false evidence
statute (Pen. Code, § 1473(e)(1)) does not entitle McPeters to further
consideration of these claims because none of these constitutional
challenges (i.e., prosecutorial misconduct, ineffective assistance of counsel)
involve the repudiation of an expert's opinion.

#### 1.    The Claims are Successive

McPeters raised his false evidence claims relating to guilt in a 1992
habeas petition, and this Court denied his claims.  (*In re McPeters*, Case
No. S025418.)

8

Before a state court will consider the merits of a second or successive habeas petition, a petitioner must justify the piecemeal presentation of habeas claims. (*In re Clark* (1993) 5 Cal.4th 750, 774.)  Here, McPeters raises the same claims and presents the same supporting evidence that he did in 1992.  His only justification for the late presentation of his claims is the 2015 amendment to the false evidence statute, providing that "false evidence" includes repudiated expert opinion. (Pen. Code, § 1473(e)(1).)  However, the only false evidence claim that McPeters raises relating to an expert opinion at the guilt phase is the allegation concerning Dr. Charles Davis's expert opinion.  But Dr. Davis only rendered an opinion for McPeters's competency proceedings (under Penal Code section 1368)—an opinion that was unrelated to the issue of guilt or punishment.  And Dr. Davis has not repudiated his opinion regarding McPeters's competency to stand trial.

In 1985, prior to trial, McPeters's counsel declared a doubt as to McPeters's competency to stand trial under Penal Code section 1368.  The court appointed experts to evaluate McPeters—one of those experts was Dr. Davis.  Ultimately, Dr. Davis concluded, along with two other experts, that McPeters was competent to stand trial.[4]  Based on the expert reports, the court found McPeters competent to stand trial.  (*People v. McPeters, supra*, 2 Cal.4th at p. 1168.)

As an initial matter, the false evidence statute only pertains to evidence "that is substantially material or probative on the issue of guilt or punishment." (Pen. Code, § 1473(b)(1).)  Here, Dr. Davis only rendered an opinion for McPeters's competency proceedings—an opinion that was

---

[4] Dr. Davis submitted a two-part report; the first part addressed McPeters's mental state at the time of the crime, and the second part concluded McPeters was presently competent to stand trial. (*People v. McPeters, supra*, 2 Cal.4th at p. 1168.)

9

unrelated to the issue of guilt or punishment.  Consequently, the false evidence statute does not apply to Dr. Davis's testimony.

In any event, Dr. Davis has not repudiated his opinion that McPeters was competent to stand trial.  In his 1992 declaration, Dr. Davis stated that his initial reports (March 28 and November 2, 1985) were valid except for the conclusions; he would have preferred to have additional and more reliable information to prepare those evaluations.  (Pet., Exh. 1 at p. 4.)  But the parties submitted the question of McPeters's competency to stand trial based not on Dr. Davis's initial reports, but instead on his last report (November 6, 1985), which concluded McPeters was competent to stand trial.  (*People v. McPeters, supra*, 2 Cal.4th at 1168.)  Dr. Davis has not repudiated that conclusion.  In fact, in his 1992 declaration, Dr. Davis states that McPeters's mental state (prior to, during, and after the offense) did not rise to the level of insanity.  (Pet., Exh. 1 at p. 4.)  Without an expert's repudiated opinion, the recent amendment to the false evidence statute does not provide a justification for McPeters's piecemeal litigation of his habeas claims.

None of McPeters's other claims about the prosecutor's use of false evidence concerning the blood testing and toxicology results are based on an expert's repudiated opinion or an expert opinion that "has been undermined by later scientific research or technological advancements." (See Pen. Code, § 1473(e)(1).)  These claims do not fall under the purview of the statutory amendment to warrant further consideration.  This Court has already heard and rejected McPeters's false evidence claims relating to his guilt.  And any new constitutional challenges that McPeters raises based on the same facts and evidence should be barred because he has not shown due diligence by now raising them decades later.  His claims should be barred as successive.

### 2.   The Claims are Untimely

McPeters's false evidence claims relating to guilt should also be barred as untimely because he is filing this state habeas petition over two decades after his 1992 state habeas petition, which presented the same claims and supporting evidence. (*In re McPeters*, Case No. S025418.)

California law does provide that a petition filed after the presumptively timely date may still be timely if the petitioner can establish the absence of substantial delay or good cause for the delay. (*In re Robbins* (1998) 18 Cal.4th 770, 780.) "Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." (*Ibid.*)

But, here, the only justification for the delay is the recent amendment to the false evidence statute relating to the repudiation of expert opinion— purportedly, giving rise to a new legal basis for the claim. As explained above, the amended statute does not apply to Dr. Davis's expert opinion on competency, and, in any event, Dr. Davis has not repudiated his opinion that McPeters was competent to stand trial. And none of McPeters's other guilt phase claims are based on expert opinion that has been repudiated or undermined by later scientific research or technological advances. Thus, any new claims are more than substantially delayed without good cause and should be barred as untimely.

### B.   The False Evidence Claims Relating to Guilt are Meritless

McPeters's constitutional claims concerning the prosecutor's alleged use of false and misleading evidence regarding McPeters's blood testing and toxicology results are without merit. Because McPeters raised these claims (with the same supporting evidence) on state habeas decades ago, the People have already briefed the merits of the claims in their informal

response (filed June 17, 1992, at pp. 8-35, 45-46) and in their return to order to show cause (filed July 29, 1993). (*In re McPeters*, Case No. S025418.) For the reasons stated in the People's prior briefing, McPeters's claims are without merit.

### C.     The False Evidence Claim Relating to the Penalty Phase is Meritless

In claim three, McPeters raises constitutional challenges to his death sentence based on prosecutor's alleged use of Dr. Joel Fort's false and misleading testimony at the penalty phase. McPeters raised the same claims in his 1992 state habeas petition, but he now argues that his allegations warrant further consideration because of the 2015 amendment to the false evidence statute, addressing repudiated expert opinion. Dr. Fort now doubts the accuracy of his penalty phase testimony that McPeters's behavior at the time of the crime was inconsistent with PCP-induced psychosis. (Pet., Exh. 2.) But Dr. Fort's claimed repudiation is neither credible nor material to McPeters's death sentence.

#### 1.     Dr. Fort's Repudiation is not Credible

At the penalty phase, the prosecution introduced Dr. Fort's testimony to dispute the defense evidence that McPeters was mentally ill (schizophrenic and psychotic) and that his psychosis was drug-induced. Dr. Fort testified that McPeters was not schizophrenic, psychotic, or under the influence of drugs when he killed the victim. (*People v. McPeters, supra*, 2 Cal.4th at 1167.)

As a threshold matter, Dr. Fort has not actually repudiated his penalty phase testimony. In his 1992 declaration, Dr. Fort stated that after reviewing additional information, he had concluded that some of the opinions he gave were probably inaccurate, and that, given the additional information, he probably would have concluded McPeters was functioning under a drug-induced psychosis at the time of the offense. (Pet., Exh. 2 at

p. 8.) But Dr. Fort does not definitively reject or invalidate his trial opinion.

Further, even if Dr. Fort's 1992 statements amount to a repudiation, such a repudiation is not credible. The People have already explained why Dr. Fort's declaration did not undercut his trial testimony, and those same reasons show that Dr. Fort's post-trial opinion is not credible. (See *In re McPeters*, Case No. S025418, informal response (filed June 17, 1992) at pp. 22-35.) Here, the People will briefly highlight some of the significant credibility issues.

First, Dr. Fort claimed that, at the time he testified, he was led to believe that all drug screens of McPeters's blood were negative. He claims he was not aware of the screening conducted by the Chemical Toxicology Institute (CTI) and the mishandling of the blood specimens. (Pet., Exh. 2 at pp. 8-9.) But Dr. Fort does not mention, or was not aware, that it was a contaminated sample of blood that was tested and produced positive results for PCP (hardly a reliable source of evidence), not the uncontaminated samples. (RT 3101; CT 529-540.) And even if the contaminated sample could be considered a reliable indication of PCP use, Dr. Fort does not explain how McPeters's strong goal-oriented behaviors—that Dr. Fort testified were inconsistent with PCP-induced psychosis—could be consistent with PCP intoxication. (See RT 4123-4130 [detailing all McPeters's behaviors that showed deliberate and controlled conduct].)

Dr. Fort claimed that he was not aware of the witnesses who observed signs of possible drug intoxication. (Pet., Exh. 2 at p. 9.) But Dr. Fort does not explain how any given witness's subjective observations of possible drug use, even assuming credible, could override his trial testimony. Dr. Fort's opinion that McPeters exhibited goal-oriented behaviors was based on psychiatric records as well as McPeters's behaviors (at the time of the crime).

Dr. Fort claimed that he was unaware of any reported history of
McPeters's drug use, particularly PCP. (Pet., Exh. 2 at pp. 9-10.) This
claim, however, is difficult to understand given Dr. Fort's own testimony as
to what he reviewed to render his opinion. Dr. Fort testified that he
reviewed the following:

- transcripts of the preliminary hearing (including the testimony
  by family members and eyewitnesses to the murder);
- records and reports from the jail;
- reports and opinions of other psychiatrists and psychologists;
- partial transcripts of trial testimony; and
- reports of statements by McPeters's family members

(RT 4120-4121.) Had he read the defense experts' reports (those of
Dr. Kirsten and Dr. Davis), he would have learned of reported PCP and
other drug use. (RT 3941-3942, 4125.) After trial, Dr. Fort claimed he did
not remember which psychiatric evaluations he reviewed, but he also
claimed that if he had been provided with Dr. Levy's report, he would of
found significant Mr. McPeters's reported use of marijuana and PCP. (Pet.,
Exh. 2 at pp. 9-10.) But Dr. Levy's report was evidence used in McPeters's
competency proceedings, and those proceedings were resolved long before
Dr. Fort's testimony at the penalty phase. It is difficult to believe that Dr.
Fort would have overlooked this evidence, and given that, after trial, Dr.
Fort did not remember what he reviewed, it seems highly unlikely that he
was unaware of the reported drug use at the time he formed his trial
opinion.

Dr. Fort claimed that if he had known of Sabrina Epperson's mental
health history, he would not have relied on her account of McPeters's
conduct that was consistent with an inference of his consciousness of guilt.
(Pet., Exh. 2 at p. 10.) Epperson's competency as a witness, however, was
not challenged, and there was evidence of her previous mental illness and

her remission at the preliminary hearing. (RT 2046, 2427.) Given that Dr. Fort testified he reviewed the preliminary hearing transcripts, he had to be aware of, or on notice of, Epperson's prior mental illness. (RT 4120.)

Dr. Fort also claimed that he was led to believe that McPeters robbed the victim—a fact he relied on to conclude that McPeters exhibited goal-directed conduct. He claimed that based on the additional information he reviewed, he has concluded that the evidence of the robbery was not as clear-cut as he was led to believe. (Pet., Exh. 2 at pp. 10-11.) But this post-trial opinion is a legal conclusion that was for the jury to decide. And the jury did so by finding that McPeters was guilty of first degree murder committed during a robbery or attempted robbery. Again, it is hard to find Dr. Fort's post-trial conclusion credible given the preliminary hearing and trial transcripts that he testified he reviewed for his penalty phase testimony and also given the jury's verdict. Further, Dr. Fort does not explain how the questionable evidence of the robbery would undercut or change his testimony about McPeters's other behaviors that were inconsistent with drug-induced psychosis. (RT 4123-4130.)

Finally, Dr. Fort claimed that he was not informed that McPeters was given antipsychotic medication after he was arrested; information which suggested that McPeters was not malingering. (Pet., Exh. 2 at pp. 11-12.) But again, Dr. Fort does not explain how any evidence of medications taken after the arrest could invalidate his trial opinion detailing the specific behaviors McPeters exhibited that were not consistent with a drug-induced psychosis. And Dr. Fort testified at the penalty phase that he had reviewed records and reports from the jail. (RT 4120.) If there was credible evidence that McPeters was receiving antipsychotic medication the day of his arrest because of a psychotic break, it is extremely unlikely that Dr. Fort missed those records and reports.

Given Dr. Fort's penalty phase testimony, which included his testimony about the records, reports, and transcripts that he reviewed to form his opinion, his repudiation is simply unbelievable. The information Dr. Fort reviewed after the trial was not sufficiently different from the information he evaluated for trial to provide a credible explanation for his repudiation.

### 2. Dr. Fort's Repudiation Is Not Material to the Death Sentence

Under California's statute, false evidence supporting a writ of habeas corpus must be "substantially material or probative on the issue of guilt or punishment." (Pen. Code, § 1473(b)(1)). False evidence is substantially material or probative if there is a reasonable probability that had it not been introduced, the verdict would have been different. (*In re Richards* (2012) 55 Cal.4th 948, 961.) Here, given the weight of the aggravating evidence, it is not reasonably probable that the absence of Dr. Fort's penalty phase testimony would have changed the death sentence.

At the penalty phase, the prosecution presented evidence of three other crimes that McPeters committed within approximately four years of the Pasnick murder, all involving McPeters's violent behavior: on one occasion, McPeters shot at a man, who allegedly failed to return McPeters's jumper cables, and at the man's brother; on another occasion, McPeters shot and killed a man while they were involved in a fist fight and was convicted of involuntary manslaughter; and on a third occasion, McPeters physically assaulted a man and threatened the man's wife after he rear-ended the man's motorcycle. (*People v. McPeters, supra*, 2 Cal.4th at 1167.)

McPeters's penalty phase defense included the following: a different version of the third prior incident; his relatives' portrayal of him as a "nice person" who had learning disabilities; one expert's opinion that he was

schizophrenic for at least a year prior to Ms. Pasnick's murder; and another expert's opinion that he was psychotic and that his psychosis was drug-induced. (*People v. McPeters, supra*, 2 Cal.4th at 1167.)

The prosecution disputed McPeters's drug-induced-psychosis defense with Dr. Fort's testimony. Dr. Fort testified that McPeters was not schizophrenic, psychotic, or under the influence of drugs when he killed the victim. The prosecution also presented testimony from McPeters's landlord and aunt, both of whom reported no evidence of drug use. The prosecution further presented the testimony from one of McPeters's jailers that McPeters had threatened to act crazy at his preliminary hearing if he did not receive his lunch, which he had already been given. (*People v. McPeters, supra*, 2 Cal.4th at p. 1167.)

Given the aggravating factors of the cold and calculated murder of Linda Pasnick and the prior incidents of violence, even without Dr. Fort's testimony, it is not reasonably probable that the mitigating evidence of McPeters's mental illness and drug use would have changed the jury's death verdict. Further, the weight of the mitigating evidence was lessened by the defense experts' lack of consensus as to McPeters's diagnosis, by evidence that two people who saw McPeters's on a regular basis were not aware of any drug use, and by evidence that McPeters had threatened to act crazy.

## CONCLUSION

This Court should issue an order to show cause on claim 1 and deny the remaining two claims.

Dated:  September 10, 2015          Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
MICHAEL P. FARRELL
Senior Assistant Attorney General
KENNETH N. SOKOLER
Supervising Deputy Attorney General


TAMI M. KRENZIN
Deputy Attorney General
*Attorneys for Respondent and Appellant*

SA2015300860
32201427.doc

## CERTIFICATE OF COMPLIANCE

I certify that the attached **INFORMAL RESPONSE TO SECOND PETITION FOR WRIT OF HABEAS CORPUS** uses a 13 point Times New Roman font and contains 4,665 words.

Dated:  September 10, 2015          KAMALA D. HARRIS
                                    Attorney General of California


                                    TAMI M. KRENZIN
                                    Deputy Attorney General
                                    Attorneys for Respondent and Appellant

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **In re McPeters on Habeas Corpus**
No.:         **S226918**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On September 10, 2015, I served the attached **INFORMAL RESPONSE TO SECOND PETITION FOR WRIT OF HABEAS CORPUS** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Margo Hunter
Joanne Diamond
Attorneys at Law
Habeas Corpus Resource Center
303 Second Street, Suite 400 South
San Francisco, CA 94107
Attorneys for Petitioner McPeters (2 copies)

California Appellate Project
101 Second Street, Suite 600
San Francisco, CA 94105-3672

Governor's Office, Legal Affairs Secretary
State Capitol, First Floor
Sacramento, CA 95814

Honorable Lisa Smittcamp
Fresno County District Attorney
Golden State Plaza
2220 Tulare Street, Suite 1000
Fresno, CA 93721

Clerk of the Superior Court
Criminal Department, Room 401
1100 Van Ness Avenue
Fresno, CA 93724

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 10, 2015, at Sacramento, California.

| | |
|---|---|
| T. Sabella | |
| Declarant | Signature |

SA2015300860
32207577.doc

**Appendix 2**

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| In re | Case No. S226918 |
| RONALD AVERY MCPETERS, | **CAPITAL CASE** |
| On Habeas Corpus. | Related to Automatic Appeal Case No. S004712 |
| | Related to Habeas Corpus Case No. S025418 |
| | Fresno County Superior Court Case No. 318047-8 |

## PETITIONER'S REPLY TO THE INFORMAL RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS

Margo Hunter (Bar No. 69426)
Margo Hunter (Bar No. 184157)
Joanne Diamond (Bar No. 298303)
HABEAS CORPUS RESOURCE CENTER
303 Second Street, Suite 400 South
San Francisco, California 94107
Telephone:   (415) 348-3800
Facsimile:   (415) 348-3873
E-mail:      docketing@hcrc.ca.gov

Attorneys for Petitioner RONALD AVERY MCPETERS

SUPREME COURT
FILED

JAN − 8 2016

Frank A. McGuire Clerk

Deputy

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| In re | Case No. S226918 |
| RONALD AVERY MCPETERS, | **CAPITAL CASE** |
| On Habeas Corpus. | Related to Automatic Appeal Case No. S004712 |
| | Related to Habeas Corpus Case No. S025418 |
| | Fresno County Superior Court Case No. 318047-8 |

## PETITIONER'S REPLY TO THE INFORMAL RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS

Margo Hunter (Bar No. 69426)
Margo Hunter (Bar No. 184157)
Joanne Diamond (Bar No. 298303)
HABEAS CORPUS RESOURCE CENTER
303 Second Street, Suite 400 South
San Francisco, California 94107
Telephone:    (415) 348-3800
Facsimile:    (415) 348-3873
E-mail:       docketing@hcrc.ca.gov

Attorneys for Petitioner RONALD AVERY MCPETERS

## TABLE OF CONTENTS

Table of Authorities ......................................................................ii

I.   Introduction .......................................................................... 1

II.  Mr. McPetersS Is Entitled to an Order to Show Cause and Relief
     on Each of His Claims. .......................................................... 4

     A.  Claim One: Mr. McPeters Is Ineligible for the Death
         Penalty Pursuant to *Ford v. Wainwright* ...................................... 4

     B.  Claim Two: The Prosecution Created Prejudicially False
         and Misleading Proof of Guilt....................................................... 7

     C.  Claim Three: Mr. McPeters's Death Sentence Was
         Unconstitutionally Obtained by the Prosecutor's
         Presentation of Knowingly False and Misleading
         Testimony From the State's Mental Health Expert ................... 15

III. Conclusion .......................................................................... 25

Verification .................................................................................. 26

Certificate As To Length................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Alcorta v. Texas,*
    355 U.S. 28 (1957) ................................................................. 10

*Berger v. United States,*
    295 U.S. 78 (1935) ................................................................. 17

*Caldwell v. Mississippi,*
    472 U.S. 320 (1985) ............................................................... 13

*Commonwealth v. Rompilla,*
    653 A.2d 626 (1995) ............................................................... 21

*Dow v. Virga,*
    729 F.3d 1041 (9th Cir. 2013) ............................................... 22

*Ford v. Wainwright,*
    477 U.S. 399 (1986) ........................................................*passim*

*Gardner v. Florida,*
    430 U.S. 349 (1977) ............................................................... 13

*Giglio v. United States,*
    405 U.S. 150 (1972) ................................................... 10, 11, 15

*Hayes v. Brown,*
    399 F.3d 972 (9th Cir. 2005) ................................................. 11

*In re Jackson,*
    3 Cal. 4th 578 (1992) ............................................................. 11

*Jackson v. Brown,*
    513 F.3d 1057 (9th Cir. 2008) ......................................... 17, 24

*Johnson v. Mississippi,*
    486 U.S. 578 (1988) ............................................................... 13

*Killian v. Poole,*
    282 F.3d 1204 (9th Cir. 2002) ............................................... 11

*In re Martin,*
    44 Cal. 3d 1 (1987) ................................................................ 15

*In re Miller,*
    17 Cal. 2d at 734 (1941) ............................................................ 8, 10, 15

*Mooney v. Holohan,*
    294 U.S. 103 (1935) .................................................................... 15

*Napue v. Illinois,*
    360 U.S. 264 (1959) ............................................................*passim*

*People v. Hines,*
    15 Cal. 4th 997 (1997) .................................................................. 6

*People v. Marshall,*
    13 Cal. 4th 799 (1996) ................................................................ 10

*People v. Morrison,*
    34 Cal. 4th 698 (2004) ................................................................ 11

*People v. Romero,*
    8 Cal. 4th 728 (1994) .................................................................. 14

*Phillips v. Ornoski,*
    673 F.3d 1168 (9th Cir. 2012) .................................................... 22

*In re Richards,*
    55 Cal. 4th 948 (2012) ........................................................ 3, 10, 24

*Rompilla v. Beard,*
    545 U.S. 374 (2005) .................................................................... 21

*Sanders v. Sullivan,*
    900 F.2d 601 (2d Cir. 1990) ...................................................... 11

*In re Sassounian*
    9 Cal. 4th at 545 n.7 (1995) ...................................................... 16

*Sears v. State,*
    493 S.E.2d 180 (1997) ................................................................ 21

*Sears v. Upton,*
    561 U.S. 945 (2010) .................................................................... 21

*Simmons v. South Carolina,*
    512 U.S. 154 (1994) .................................................................... 13

*Townsend v. Burke,*
   334 U.S. 736 (1948).................................................................. 13

*United States v. Agurs,*
   427 U.S. 97 (1976)....................................................... 10, 11, 15

*United States v. Bagley,*
   473 U.S. 667 (1985)......................................................... 11, 16

*United States v. Blueford,*
   312 F.3d 962 (9th Cir. 2002) ............................................... 10

*United States v. Petty,*
   982 F.2d 1365 (9th Cir. 1993) .............................................. 14

*United States v. Tucker,*
   404 U.S. 443 (1972).............................................................. 13

*United States v. Young,*
   17 F.3d 1201 (9th Cir. 1994) ................................................ 11

*Williams v. Taylor,*
   529 U.S. 362 (2000).............................................................. 19

**Constitutional Provisions**

Cal. Const. art. I................................................................................ 4

U.S. Const. amend. VIII................................................................... 13

U.S. Const. amend. XIV..................................................................... 4

**Statutes**

Cal. Penal Code § 190.4 ............................................................ 23, 24

Cal. Penal Code § 1181 ................................................................... 6

Cal. Penal Code § 1473 ........................................................*passim*

Cal. Penal Code § 3700.5 ................................................................ 5

Cal. Health and Safety Code § 5150 ............................................. 19

**IN THE SUPREME COURT OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| In re | Case No. S226918 |
| RONALD AVERY MCPETERS, | **CAPITAL CASE** |
| On Habeas Corpus. | Related to Automatic Appeal Case No. S004712 |
| | Fresno County Superior Court Case No. 318047-8 |

**PETITIONER'S REPLY TO THE INFORMAL RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS**

TO:   THE HONORABLE TANI CANTIL-SAKAUYE, CHIEF JUSTICE OF CALIFORNIA AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Petitioner, Ronald Avery McPeters, by this verified Reply to the Informal Response, incorporates the allegations of his Petition for Writ of Habeas Corpus and the facts contained in the exhibits filed in support of those allegations as if fully set forth herein, and offers the following Reply demonstrating that he is entitled to a grant of relief from his judgment of conviction and sentence of death.

## I.   INTRODUCTION

Claim One of the petition pending before this Court seeks to vacate Mr. McPeters's death sentence in light of his intractable mental illness, which has rendered him permanently incompetent and ineligible for execution within the meaning of *Ford v. Wainwright*, 477 U.S. 399 (1986).  Respondent fully agrees that "the unusual circumstances of this case provide a compelling

argument for reaching and resolving McPeters's *Ford* claim sooner – on habeas – rather than later." Inf. Resp. at 2. Based on the overwhelming medical evidence submitted in support of this claim, including the findings by respondent's own expert, which confirm those of petitioner's experts, respondent invites the Court to issue an order to show cause, and represents that because "the People at this point know with certainty that we have at our disposal no evidence with which we might contest McPeters's showing," respondent is prepared to stipulate to the Court resolving the Claim on the basis of the undisputed evidence in Exhibits 17, 18, and 19 to the petition, without need for an evidentiary hearing. Inf. Resp. at 3. Thus, both parties urge this Court to grant relief and put an end to unnecessary, continued litigation and the needless expenditure of judicial resources.

Mr. McPeters is further entitled to relief based on Claims Two and Three, alleging the presentation of false evidence throughout both phases of his trial. As with the expert opinions supporting Claim One, respondent's current expert confirms the material facts supporting these Claims: at the time of the offense, Mr. McPeters suffered from a severe mental illness, Schizophrenia, which began in his adolescence and was "full-blown" by his early twenties; his mental illness made Mr. McPeters "particularly sensitive to the mental effects of PCP and marijuana"; the negative results of pre-trial blood tests did *not* "establish that Mr. McPeters did not use illicit drugs around the time" of the offense; and his actions were "a likely consequence of the cumulative effects of both" PCP intoxication and "progressive mental illness," such that it was at least the case that Mr. McPeters's "mental processes and behaviors were not normal or unimpaired around the time" of the offense. Ex. 5 at ¶¶ 5, 7, 11, 15; Ex. 19 at ¶¶ 10-11.

The prosecution's mental health experts at Mr. McPeters's trial also would have reached similar conclusions if the prosecution – or the defense – had disclosed the accurate evidence of Mr. McPeters's likely drug

intoxication and mental illness.   Instead, the prosecutor falsely and misleadingly informed its own experts, defense counsel, and the trial court, that the results of drug screens of Mr. McPeters's blood ruled out the possibility that Mr. McPeters was affected by illicit drugs at the time of the charged offenses.   In turn, the prosecutor further withheld crucial evidence from his own mental health expert, including additional evidence supporting Mr. McPeters's history of drug use before, during, and after the crime; evidence of his psychotic behavior after the crime; and evidence of his history of mental illness. As a result of this false information, crucial expert testimony regarding Mr. McPeters's mental state at the time of the crime and powerful mitigating evidence was not presented to the jury, all of which could have affected the outcome of both phases of the trial.

Over twenty years ago, Mr. McPeters informed this Court of the prosecutor's false and misleading representations, and presented the declarations of the prosecution's trial experts, which recanted the conclusions they were misled to reach on the basis of such false evidence. *See* Ex. 1, Declaration of Charles Alan Davis, M.D., Ex. N in Support of Petition for Writ of Habeas Corpus, *In re McPeters*, California Supreme Court Case No. S025418, March 1, 1992; Declaration of Joel Fort, M.D., Ex. MM in Support of Petition for Writ of Habeas Corpus, *In re McPeters*, California Supreme Court Case No. S025418, March 2, 1992.  At that time, however, the Court did not construe the scope of the false-evidence claims cognizable under Penal Code Section 1473 to include those that were based on the principle that "the truth or falsity of expert testimony depends on the truth or falsity of underlying facts essential to the expert's inferential method and ultimate opinion." *In re Richards*, 55 Cal. 4th 948, 973 (2012) (Liu, J., dissenting).

The law has changed.  As acknowledged by respondent, effective January 1, 2015, cognizable false-evidence claims now explicitly include

those based on "expert opinion that the expert has repudiated." Inf. Resp. at 8 (citing Penal Code, § 1473(e)(1)).   Despite respondent's attempts to perpetuate the State's suppression of Mr. McPeters's profoundly disturbed mental state, which even the State's own experts forthrightly acknowledged in postconviction proceedings over two decades ago, there is no good reason for this Court not to issue an Order to Show Cause and permit Mr. McPeters to prove his entitlement to relief at an evidentiary hearing.

## II.  MR. MCPETERS IS ENTITLED TO AN ORDER TO SHOW CAUSE AND RELIEF ON EACH OF HIS CLAIMS.

### A.  Claim One: Mr. McPeters Is Ineligible for the Death Penalty Pursuant to *Ford v. Wainwright*

Mr. McPeters has established a prima facie case that the imposition of the death penalty upon him is in violation of his Eighth and Fourteenth Amendment rights prohibiting excessive, cruel and unusual punishment, and to the equal protection of the law, and his analogous state rights guaranteed by Article I, Sections 1, 7, 9, 12, 13, 14, 15, 16, 17, 24, 27, and 28 of the California Constitution and state law because as a result of a chronic, long-standing mental illness he does not have a factual or rational understanding of his sentence or why it was imposed.  Mr. McPeters presented substantial, unrefuted factual allegations and documentary support demonstrating that his illness is intractable and that there is no likelihood that he will regain his mental competence; therefore, he is and will forever be barred from execution pursuant to *Ford v. Wainwright*.

Although the parties disagree over the analytical routes that should lead to the Court's consideration of Mr. McPeters's *Ford* claim at this juncture, the parties are in complete agreement that Mr. McPeters is currently mentally

incompetent within the meaning of *Ford*, and that the unique circumstances present compelling, humane, and practical reasons for deeming Mr. McPeters's claim to be presently cognizable on habeas corpus.[1] As alleged in the petition, overwhelming expert opinion clearly indicates that Mr. McPeters "does not have a factual or rational understanding of his sentence or why it was imposed," and that "there is no medically foreseeable likelihood that his currently impaired level of cognition and mentation can be expected to improve further to any appreciable degree." Ex. 17 at ¶ 16; *see also* Ex. 18 at 25 ("Mr. McPeters does not know or understand that he has been sentenced to death, and does not know or understand that he faces execution as a penalty for the commitment offense . . . The long-term, intractable nature of his symptoms also leads me to conclude to a reasonable degree of medical certainty that there is no basis to prognosticate any improvement in his current level of impaired cognitive functioning"). Respondent's expert unequivocally agrees:

> "[T]here is no reason to predict significant future improvement in [Mr. McPeters's] impaired mental functioning. The treatment he has been receiving in recent months is likely to be required to maintain his current marginal level of functioning . . . [I]t is my opinion, which I hold to a reasonable degree of medical certainty, that Mr. McPeters is unaware and does not

---

[1] While respondent's counsel understandably is keen to defend the constitutionality of Penal Code section 3700.5, *et seq.*, as providing a *Ford*-compliant mechanism for death-sentenced prisoners to initiate an inquiry into their competency to be executed, the verbiage expended on the effort fails to accomplish the intended goal. *See* Inf. Resp. at 4-5. At bottom, respondent's argument concedes that only the Warden is authorized to seek judicial determination of a death-sentenced prisoner's sanity, and there is no statutory authorization for the prisoner to do so. Indeed, respondent cites the most recent decisional authority as holding that there is "*no requirement*" that the Warden's adverse determination "be judicially reviewable." *Id.* at 5 and n.1 (emphasis added).

understand that he is to be executed as a penalty for committing murder. Another consequence of his mental illness is that he does not know and understand why his sentence was imposed."

Ex. 19 at ¶¶ 24-25.

In light of the nature of Mr. McPeters's mental illness and the unique circumstances of this case, both parties agree that Mr. McPeters's claim is ripe for consideration by this Court. As respondent aptly notes, "compelling reasons exist for raising a claim of 'permanent incompetence' sooner rather than later, for if a prisoner can never be executed under *Ford*, then all other pending challenges to the death judgment are moot, and any continuing judicial inquiry into the validity of those other challenges would be pointless." Inf. Resp. at 6. As such, respondent acknowledges that Mr. McPeters has established a prima facie case that he is and will always be incompetent to be executed, and that no evidentiary hearing is necessary because the people have no further evidence to offer or develop to the contrary. Inf. Resp. at 7.

In light of the parties' positions, and in order to avoid the unnecessary expenditure of scarce judicial resources that continued litigation would demand, Mr. McPeters respectfully encourages this Court to issue an Order to Show Cause, and that in response to respondent's indicated stipulation that the issue may be resolved on the basis of the undisputed allegations and supporting evidence in the petition, the Court grant relief vacating Mr. McPeters's death sentence.[2]

---

[2] Nor need the Court "forg[e] an 'exception' to section 3700" to "establish its authority" to grant relief at this juncture. Inf. Resp. at 6-7 and n.3. Rather, Penal Code section 1181, subdivision 7, affords the Court the authority to modify the penalty verdict by imposing the lesser punishment whenever it is convinced that the punishment imposed by the jury "is contrary to law." Although the Court has explained that the statute does not authorize it "to overturn a judgment of death *simply* because we disagree with the jury's penalty determination," *People v. Hines*, 15 Cal. 4th 997, 1080 (1997)

## B.   Claim Two: The Prosecution Created Prejudicially False and Misleading Proof of Guilt

The petition and supporting exhibits make a prima facie showing that Mr. McPeters's capital conviction and death sentence were obtained based on false, misleading, and unreliable evidence concerning the nature, circumstances, and results of drug screens conducted on Mr. McPeters's blood samples at the time of trial. The prosecution's mental health expert, Dr. Charles A. Davis, relied on this false, inaccurate, and incomplete information when rendering his opinions regarding Mr. McPeters's mental status at the time of the crime, to Mr. McPeters's detriment. Dr. Davis's declaration, submitted as Exhibit 1 to the current petition, clearly demonstrates that there is a reasonable likelihood that Dr. Davis's repudiated opinion could have affected the outcomes at the guilt and penalty phases of Mr. McPeters's trial.

Respondent does not offer any legal or factual basis to dispute Mr. McPeters's entitlement to relief.

### 1.   Mr. McPeters's False Evidence Claim Is Not Procedurally Barred

Respondent contends that the Claim is procedurally barred, as untimely and successive, because it was previously presented and rejected in the initial 1992 habeas petition, and does not currently rely on the repudiation of an expert's opinion. Inf. Resp. at 8-11. As a matter of fact and law, the Claim does rely on an expert's repudiated opinion.

Respondent apparently acknowledges that this Court may properly

---

(emphasis added), such holdings do not preclude the Court from exercising the authority where, as here, the parties agree that, in light of the prisoner's intractable incompetence, carrying out the death sentence would be "contrary to law."

consider the merits of a claim for habeas relief – here, one alleging the presentation of false evidence – that is based on the same grounds that were presented in a previously denied petition when there has been a substantial change in facts or law. *In re Miller*, 17 Cal. 2d 734, 735 (1941). Respondent also appears to recognize that on September 26, 2014, the Governor signed into law Senate Bill number 1058, which amended Penal Code section 1473 to include section (e), subsection (1), which provides:

> For purposes of this section, "false evidence" shall include opinions of experts that have either been repudiated by the expert who originally provided the opinion at a hearing or trial or that have been undermined by later scientific research or technological advances.

Thus, effective January 1, 2015, Penal Code section 1473 specifically defines "false evidence" to include expert opinions that have since been repudiated. Cal. Penal Code § 1473(2)(e)(2).

Respondent nevertheless contends that the recent amendments do not entitle Mr. McPeters to consideration of Claim Two because Dr. Davis provided the trial court with an opinion only on the question of Mr. McPeters's competency to stand trial, and he has not repudiated that opinion. Inf. Resp. at 9-10. Respondent misperceives the record.

First, contrary to respondent's understanding of the record, *see* Inf. Resp. at 9-10, Dr. Davis's report of November 2, 1985 expressly opined on Mr. McPeters's mental state and *mens rea* at the time of the crime, and *was* introduced at the hearing on November 18, 1985, which was conducted to determine Mr. McPeters's competency. Supp. RT C at 26-27. Although Dr. Davis also prepared a "report" dated November 6, 1985, it was merely an addendum to the November 2 report, and presented only a two-sentence, conclusory opinion finding Mr. McPeters competent. The parties submitted both Dr. Davis's November 2 report and the November 6 addendum for the

trial court's consideration at the hearing on November 18, 1985. *Id.* Thus, Dr. Davis's substantive report, and opinion regarding Mr. McPeters's culpable mental state at the time of the charged offense, "was introduced against" Mr. McPeters "at a hearing . . . relating to his . . . incarceration," within the meaning of Penal Code section 1473(b)(1).

Second, Dr. Davis explicitly repudiated his 1985 opinion regarding Mr. McPeters's mental state. In the report submitted to the trial court, Dr. Davis had opined that Mr. McPeters's "clinical course best represents phencyclidine [PCP] intoxication," and based on witnesses' description of events "it would seem that this almost has to be associated with drug intoxication"; but further opined that "[i]f there was no evidence of phencyclidine, then that would negate [his] diagnosis." 1 Supp. CT 57. In the context of the prosecution's misleading misrepresentations regarding the absence any drugs in Mr. McPeters's blood specimens, Dr. Davis's opinion necessarily misled defense counsel and the trial court to believe there could be no medical support for a defense based on Mr. McPeters's impaired mental state; and it enabled the prosecution to mislead the jury to discount any possibility that Mr. McPeters lacked requisite criminal intent. *See* 13 RT 3151-53, 3182; 4 CT 929-30.

After considering the additional information provided by habeas counsel in postconviction proceedings, which revealed the falsity of the prosecution's representations regarding the blood analyses, Dr. Davis repudiated his prior opinion and conclusively stated that the purported lack of phencyclidine evidence did not preclude a medical opinion of a drug-impaired mental state. Rather, Dr. Davis concluded that he had "no doubt that Mr. McPeters probably ingested PCP prior to the shooting of Linda Pasnick," and that Mr. McPeters's resulting mental state "constitute[d] substantial evidence that should have been considered in determining whether Mr. McPeters actually entertained criminal intent." Ex. 1 at ¶¶ 7,

10.

Accordingly, Mr. McPeters's false evidence claim is fully cognizable pursuant to the principle explained in *In re Miller*, 17 Cal. 2d at 734, and the change in law effectuated by the recent amendment of Penal Code section 1473.

### 2. Mr. McPeters's Allegations Set Forth a Prima Facie Case for Relief

#### a. Governing Legal Principles

A defendant's constitutional rights are violated when a prosecutor obtains a conviction through the use of false evidence, including false or perjured testimony, or by the failure to correct false testimony, which is material to the issue of guilt or punishment. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *United States v. Agurs*, 427 U.S. 97, 112-13 (1976); *Giglio v. United States*, 405 U.S. 150, 154 (1972). This includes situations in which the prosecution allows a witness to give a false impression of the evidence, *see, e.g.*, *Alcorta v. Texas*, 355 U.S. 28, 31 (1957), as well as those in which the testimony presented is false outright, *see, e.g.*, *United States v. Blueford*, 312 F.3d 962 (9th Cir. 2002). State law similarly provides for habeas relief where false, material evidence was introduced against a criminal defendant. Cal. Penal Code § 1473(b)(1); *In re Richards*, 55 Cal. 4th at 961; *People v. Marshall*, 13 Cal. 4th 799, 830 (1996). As noted above, the state-law definition of "false evidence" explicitly includes repudiated expert testimony. Cal. Penal Code § 1473(e)(1).

To obtain relief, Mr. McPeters is not required to show that the prosecution knew or should have known that the testimony was false. *See, e.g.*, Cal. Penal Code § 1473(c) ("Any allegation that the prosecution knew or should have known of the false nature of the evidence . . . is immaterial to the prosecution of a writ of habeas corpus brought pursuant to subdivision

(b)"). When the false or misleading nature of the testimony comes to light, however, the prosecution has the duty to correct it. *In re Jackson*, 3 Cal. 4th 578, 595 (1992). This obligation applies even if such testimony relates only to witness credibility. *People v. Morrison*, 34 Cal. 4th 698, 716-17 (2004).

Federal law is in accord. *See Killian v. Poole*, 282 F.3d 1204, 1209-10 (9th Cir. 2002) (granting relief and holding that prosecution's knowledge of the witness's falsehoods are irrelevant); *United States v. Young*, 17 F.3d 1201, 1203-04 (9th Cir. 1994) (holding that a defendant convicted on false testimony was entitled to new trial even if prosecutor unwittingly presented that false evidence); *Sanders v. Sullivan*, 900 F.2d 601, 606-07 (2d Cir. 1990) (granting habeas relief on one conviction although perjurious nature of testimony was not known to parties until after trial). Moreover, whether defense counsel should have known that a witness testified falsely does not negate the prosecutor's duty to correct false testimony that comes to light. *See Napue*, 360 U.S. at 269-70; *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) ("the rule has been clear for decades: a criminal defendant is denied due process of law when a prosecutor either knowingly presents false evidence or fails to correct the record to reflect the true facts when unsolicited false evidence is introduced at trial").

A habeas petitioner is entitled to relief where there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103 & n.9; *Giglio*, 405 U.S. at 154 (same). Once a habeas petitioner has demonstrated that false evidence or testimony was presented at his trial and that there is any reasonable probability that the false or perjured testimony may have affected the jury's verdict, no additional showing of prejudice is required. *See United States v. Bagley*, 473 U.S. 667, 682 (1985); *Napue*, 360 U.S. at 271.

### 3. Dr. Davis's Repudiated Opinion Was Material to the Questions of Guilt and Penalty

As alleged in the petition, from the pretrial stages of the case through penalty-phase closing argument, the prosecutor presented false and misleading evidence to the court, trial counsel, and the jury regarding the circumstances of the handling and testing of Mr. McPeters's blood specimens, the results of various drugs screens, and the relevance of those results – all in an effort to make it appear as if Mr. McPeters's behavior and functioning at the time of the crime were not affected by the consumption of any drugs. The prosecutor further cast doubt on the accuracy of the defense lab's positive drug screen result by falsely suggesting that the positive and therefore favorable results were caused by contamination of Mr. McPeters's blood specimen with that from other specimens. As a result of the false specter of contamination, the jury never learned of the positive drug screen result, nor did key defense experts for whom this information was crucial to their expert medical opinions.

Against this backdrop, Dr. Davis's opinions were undoubtedly substantially material to the issue of guilt and could have affected the outcome of the guilt phase of the case. During the guilt phase, evidence was presented that Mr. McPeters appeared nervous and fidgety and had smoked marijuana the day before the crime, but the jury was informed only of the false post-arrest toxicological testing that yielded negative results for drugs and alcohol. Although the defense argued to the jury that something must have been wrong with Mr. McPeters in light of some of the bizarre facts of the crime, and therefore he lacked the specific intent for the crimes, no mental health testimony was presented in support of this theory, nor was there testimony concerning the positive drug screens. 13 RT 3193-95. The prosecutor capitalized on this lack of evidence during his closing argument, arguing that Mr. McPeters possessed the requisite intent for first-degree

12

murder. *See, e.g.*, 13 RT 3151-53, 3182. The prosecutor further emphasized the false evidence regarding the drug screens, when he argued that the defense wanted the jury to "go on a fantastic voyage into the imaginary world of Oz," which included ignoring the negative blood test. 13 RT 3204. Had the jury heard expert testimony that the purported absence of positive drug tests did not foreclose the high probability that Mr. McPeters acted in a drug-induced psychotic state, which called into question his ability to form the requisite mental state of the crimes, there is at least a reasonable probability the outcome of the guilt phase would have been different.

The effect of the false evidence also was substantially material to punishment. The bar on the introduction of false or misleading evidence is particularly critical in a capital case, where the Eighth Amendment imposes a requirement of heightened reliability. *See Johnson v. Mississippi*, 486 U.S. 578 (1988) (holding that Eighth Amendment required reversal of death sentence based in part upon felony conviction subsequently set aside); *Simmons v. South Carolina*, 512 U.S. 154 (1994) (holding that the due process clause requires that a defendant be permitted to inform the jury of parole ineligibility to correct misimpression created by the state's argument that he will present a danger to the community if not sentenced to death); *Caldwell v. Mississippi*, 472 U.S. 320 (1985) (holding that the Eighth Amendment was violated where jury was given inaccurate information regarding the availability of appellate review of its decision to sentence defendant to death); *Gardner v. Florida*, 430 U.S. 349 (1977) (finding violation of Due Process Clause where a death sentence was based in part upon false information contained in probation report that defendant had no opportunity to rebut); *United States v. Tucker*, 404 U.S. 443, 447 (1972) (non-capital sentence imposed on the basis of materially untrue assumptions regarding defendant's previous criminal record violates Due Process Clause and must be vacated); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (same);

13

*United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993) (holding that defendant had a due process right not to be sentenced on basis of materially incorrect information).

At the penalty phase, the defense presented the testimony of Dr. Kirsten, who rendered a diagnosis of an atypical psychosis with an underlying personality disorder with antisocial features. 16 RT 3929. He further opined that Mr. McPeters was psychotic for many months, including the time of his incarceration in August 1984. 16 RT 3930. Dr. Kirsten believed that Mr. McPeters's psychosis was from the use of drugs, most likely PCP, and that he was psychotic at the time of the crime, despite the negative drug test results. *See, e.g.*, 16 RT 3931, 3933-34, 3954-55. On cross-examination, however, the prosecutor undermined Dr. Kirsten's testimony by emphasizing that two different laboratories conducted drug screens of blood samples with negative results, that one of the labs was equipped with a mass spectrometer, and that Mr. McPeters himself had reported not using drugs at the time of his arrest. 16 RT 3942, 3944-47. During his penalty-phase closing argument, the prosecutor continued to capitalize on the false evidence, by arguing that Mr. McPeter's drugs screens detected "no presence of drug, specifically no presence of P.C.P.," and that "no one or no laboratory found anything that would suggest the presence of this drug or of any drug." 17 RT 4252. Had Dr. Davis been able to testify conclusively about Mr. McPeters's PCP use and its effects on Mr. McPeters's mental state, the outcome of the penalty phase would have been favorable.

Because Mr. McPeters has established a prima facie case of the presentation of false evidence, which respondent has failed to show lacks merit on its face, this Court must issue an order to show cause and, ultimately, order that Mr. McPeters's guilt, special circumstance, and penalty verdicts be vacated on the grounds set forth above. *See People v. Romero*, 8 Cal. 4th 728, 742 (1994).

C.   **Claim Three: Mr. McPeters's Death Sentence Was Unconstitutionally Obtained by the Prosecutor's Presentation of Knowingly False and Misleading Testimony From the State's Mental Health Expert**

Mr. McPeters has established a prima facie case that the prosecutor presented prejudicially false evidence at the penalty phase of his capital trial. As initially alleged in the Petition for Writ of Habeas Corpus filed March 2, 1992, the prosecutor elicited the false and misleading opinions of his mental health expert, Dr. Joel Fort, and did not seek to correct such testimony, in violation of Mr. McPeters's constitutional rights. *See* 1992 Pet. at 73-80. The claim was supported by an undisputed declaration, signed by Dr. Fort under penalty of perjury, repudiating his trial testimony. *See* Ex. 2, Declaration of Joel Fort, M.D., Ex. MM in Support of Petition for Writ of Habeas Corpus, *In re McPeters*, California Supreme Court Case No. S025418, March 2, 1992. As discussed above, the recent amendment of California's false evidence statute to include explicitly claims based on repudiated expert opinion (Cal. Penal Code § 1473(2)(e)(2)) constitutes a change in the law substantially affecting the rights of Mr. McPeters, and entitling him to further consideration of this Claim. *In re Martin*, 44 Cal. 3d 1, 27 & n.2 (1987); *In re Miller*, 17 Cal. 2d at 735.

As also discussed above, the presentation of false testimony is "inconsistent with the rudimentary demands of justice" and violates due process, requiring reversal of the jury's verdict. *See Mooney v. Holohan*, 294 U.S. 103, 112 (1935). A habeas petitioner is entitled to relief where there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103 & n.9; *Giglio*, 405 U.S. at 154 (same). Once a habeas petitioner has demonstrated that false evidence or testimony was presented at his trial and that there is any reasonable probability that the false evidence or testimony could have affected the jury's

verdict, no additional showing of prejudice is required. *See Bagley*, 473 U.S. at 682; *Napue*, 360 U.S. at 271; *In re Sassounian* 9 Cal. 4th at 545 n.7 (1995). Mr. McPeters's allegations establish a prima facie case that the prosecution introduced materially false testimony that affected the jury's sentencing decision.

Respondent attempts to challenge Dr. Fort's "claimed repudiation" by contending (1) Dr. Fort did not actually repudiate his opinion; (2) the repudiation is not credible; and (3) the false testimony was not material. Whether considered severally or cumulatively, none of these contentions provides any basis to refute Mr. McPeters's prima facie case for relief.

### 1. Dr. Fort Repudiated His Opinion

Respondent argues that "Dr. Fort has not actually repudiated his penalty phase testimony," because his declaration "does not definitively reject or invalidate his trial opinion." Inf. Resp. at 12-13. The contention is contrary to the record. At trial, Dr. Fort was misled to conclude that Mr. McPeters was not psychotic or suffering from schizophrenia, nor was he under the influence of illicit drugs at any relevant time. 17 RT 4123, 4149. By contrast, Dr. Fort's declaration explicitly identifies at least seven erroneous bases for his opinions, and states that if he had been provided with accurate information he "would have revised [his] evaluation of Mr. McPeters's mental state and criminal responsibility," to include the probability that "Mr. McPeters was functioning in a psychotic state due to a combination of a preexisting ongoing (functional) psychosis and recent use of phencyclidine (PCP) or other psychoactive drugs." Ex. 2 at ¶¶ 4-5. Dr. Fort's declaration thus constitutes a clear repudiation of his penalty-phase testimony, which categorically excluded psychosis and/or drug intoxication as mitigating factors for the jury to consider in sentencing.

Dr. Fort's declaration also demonstrates that by failing to provide Dr.

Fort with accurate information or correcting his misimpression of available evidence, the prosecutor manipulated the facts, elicited false testimony and thereby "overstepped the bounds of propriety and fairness which should characterize the conduct of . . . a [prosecutorial] office in the prosecution of a criminal offense." *Berger v. United States*, 295 U.S. 78, 84 (1935) (finding prejudicial misconduct where, inter alia, the prosecutor misstated the facts while examining witnesses). Once "it is established that the government knowingly permitted the introduction of false testimony reversal is virtually automatic." *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008).

### 2. Respondent Does Not Provide Any Valid Reason to Discount the Credibility of Dr. Fort's Declaration

Respondent's attempts to challenge the credibility of Dr. Fort's declaration are at best illogical and at worst continue to exploit the prosecution's false evidence that misled Dr. Fort to proffer his now-repudiated opinions.

First, respondent does not dispute that Dr. Fort was misled to believe that the drug screens of Mr. McPeters's blood were all negative, but counters that the positive results were found only in a "contaminated" sample. Inf. Resp. at 13. That, of course, is the now thoroughly discredited rataplan that the prosecution sounded throughout the trial proceedings to mislead everyone to believe that the positive drug result could be explained only by contamination of the blood sample. Respondent offers *nothing* to refute the subsequent opinions of *every* qualified expert to consider the issue that there is no scientific basis to conclude that the positive results can be attributed only to contamination and that the drug screens do not provide *any* basis to conclude, as Dr. Fort was misled to do, that Mr. McPeters was not under the influence of PCP (as well as psychosis) at the time of the offense. *See, e.g.,* Exh. 1 at ¶¶ 7-8; Exh. 3, Declaration of Randall C. Baselt, Ph.D., Exhibit ZZ

in Support of Traverse, *In re McPeters*, California Supreme Court Case No. S025418, December 15, 1993, at ¶¶ 8-9.

Respondent alternatively argues that Dr. Fort's declaration "does not explain" how an informed opinion that Mr. McPeters was affected by drug intoxication can be squared with his apparently "goal-directed" behavior at the crime scene. Putting aside the fact that such issues are properly addressed at an evidentiary hearing where a witness is afforded a fair opportunity to provide such explanations, respondent overlooks the fact that Dr. Fort's declaration explains that his opinion at trial regarding "goal-directed" behavior was *mis*informed by limited and false descriptions of Mr. McPeters's behavior at the time of the crime and shortly after his arrest. *See, e.g.*, Ex. 2 at ¶ 5.e (Dr. Fort's mistaken perception of Mr. McPeters's "goal-directed" behavior was undercut by the declarations of civilian and police witnesses, which rendered the evidence that Mr. McPeters had committed a robbery "less clear-cut" than Dr. Fort had been led to believe at the time of trial).

Second, respondent professes difficulty understanding or believing that Dr. Fort did not receive, or may have overlooked, information in transcripts, medical records, psychiatric reports and other information that he *should* have received and reviewed in rendering his opinion. Inf. Resp. at 14. Respondent's incredulity is not the issue. Respondent does not dispute that the information known to the prosecutor, and in his possession, was diametrically at odds with Dr. Fort's testimony describing the basis for his opinions. *See, e.g.*, Ex. 2 at ¶ 5.b (Dr. Fort's mistaken belief that no one who encountered Mr. McPeters observed signs of intoxication was contrary to police reports documenting the fact "Mr. McPeters was too combative, incoherent and confused to be booked"). Nor does respondent dispute that if the prosecutor – or defense counsel – had presented Dr. Fort with accurate information he would have corrected his false testimony. *See, e.g.*, Ex. 2 at

¶ 6 (Dr. Fort would not have credited Mr. McPeters's denial of drug use and "answers to basic background questions" during the booking process if he had been aware that the jailers regarded Mr. McPeters as "5150," *i.e.*, gravely disabled within the meaning of Health and Safety Code section 5150).

Third, respondent does not dispute that reviewing the details of Sabrina Epperson's extensive psychiatric history would have provided Dr. Fort with reasons to disregard the witness's description of Mr. McPeters's behavior, which purportedly evidenced consciousness of guilt. *See* Ex. 2 at ¶ 5.d. Respondent instead unconvincingly argues that because Dr. Fort was provided with the transcript of the preliminary hearing, he should have been fully apprised of Ms. Epperson's mental illness. Inf. Resp. at 14-15.

Fourth, respondent similarly does not dispute that the information provided to Dr. Fort by habeas counsel – and which should have been disclosed by the prosecution or defense counsel – reasonably led the expert to question whether Mr. McPeters actually robbed the victim. Inf. Resp. at 15. Respondent instead contends that whether a robbery was committed was a question for only the jury to decide. *Id.* No logical or legal principle supports the suggestion that a medical expert may not assess the actual nature of a defendant's conduct based on evidence *in addition* to the evidence presented to the jury. *See Williams v. Taylor*, 529 U.S. 362 (2000) (assessment of habeas corpus claims requires consideration of the "totality" of evidence, "both that adduced at trial, and the evidence adduced in the habeas proceeding"). Moreover, as set forth in the extensive, undisputed allegations of Mr. McPeters's initial petition before this Court, *both* the jury *and* Dr. Fort were misled by the prosecution's multiple acts of misconduct in presenting false evidence that Mr. McPeters robbed the victim. Respondent's attempt to exploit the fruits of such misconduct do not provide a legitimate basis to reject the credibility of Dr. Fort's declaration repudiating his false trial testimony.

Fifth, respondent faults Dr. Fort for failing to "explain" how Mr. McPeters's regimen of antipsychotic medications indicated that Mr. McPeters was not malingering or exaggerating psychotic symptoms. Inf. Resp. at 15. Dr. Fort, however, did explain exactly this point: the consistent administration of the medication during Mr. McPeters's incarceration reflected the judgment of medical professionals that Mr. McPeters "was genuinely psychotic," and if he had not been psychotic the medication would have been contraindicated and dangerous. Ex. 2 at ¶ 5.g. Dr. Fort's opinion on this score was also confirmed by the undisputed declarations of multiple mental health professionals who examined Mr. McPeters prior to trial. *See, e.g.*, Declaration of Allan G. Headberg, Ph.D., Ex. T in Support of Petition for Writ of Habeas Corpus, *In re McPeters*, California Supreme Court Case No. S025418, March 1, 1992, at ¶ 4; Declaration of Allen H. Middleton, Ph.D., Ex. EE in Support of Petition for Writ of Habeas Corpus, *In re McPeters*, California Supreme Court Case No. S025418, February 29, 1992, at ¶ 12; Declaration of Markham Kirsten, M.D., Ex. LL in Support of Petition for Writ of Habeas Corpus, *In re McPeters*, California Supreme Court Case No. S025418, February 28, 1992, at ¶ 7.

Thus, even if Dr. Fort's credibility could be rejected fairly on the basis of the pleadings (which it cannot) respondent has not identified any reasonable basis to do so.

### 3. In the Absence of Dr. Fort's Improperly Admitted Testimony, Mr. McPeters Would Not Have Been Sentenced to Death

Respondent argues that Dr. Fort's false testimony is not substantially material or probative on the issue of punishment within the meaning of Penal Code § 1473(b)(1), Inf. Resp. at 16, because:

Given the aggravating factors of the cold and calculated

> murder of Linda Pasnick and the prior incidents of violence,
> even without Dr. Fort's testimony, it is not reasonably probable
> that the mitigating evidence of McPeters's mental illness and
> drug use would have changed the jury's death verdict.

Inf. Resp. at 17. As an initial matter, the United States Supreme Court has made it abundantly clear that a capital defendant can suffer prejudice at the penalty phase of his trial notwithstanding the aggravating facts of the capital offense itself or prior crimes of violence introduced against him. In *Rompilla v. Beard*, 545 U.S. 374 (2005), the robbery victim in the capital case was stabbed repeatedly and set on fire. 545 U.S. 377. At the penalty phase, the prosecutor introduced evidence that Rompilla had a significant history of felony convictions indicating the use or threat of violence, 545 U.S. 378, which included a rape conviction and a burglary conviction in which he brandished and used a knife to harm his victim, *Commonwealth v. Rompilla*, 653 A.2d 626, 634 (1995). In *Sears v. Upton*, 561 U.S. 945 (2010), the victim was struck with brass knuckles and forced into her car; pulled into the backseat, handcuffed with her hands behind her back, and driven through two states; raped; removed from the car and stabbed to death. *Sears v. State*, 493 S.E.2d 180, 182 (1997). Despite the aggravating nature of the crimes in *Rompilla* and *Sears*, the Court held that the failure of trial counsel in those cases to investigate and present mitigating evidence was prejudicially deficient. The facts of the homicide in this case, and Mr. McPeters's prior convictions do not, therefore, negate the prejudicial effect of the improper introduction of Dr. Fort's false testimony.

False or misleading evidence is substantially material or probative if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Napue*, 360 U.S. at 271. The strongest mitigating factor submitted to the jurors at Mr. McPeters's penalty trial was:

> Whether or not at the time of the offense the capacity of the

21

> defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or the affects [sic] of intoxication.

3 CT 694; *see* 17 RT 4271-73. It was specifically to rebut this mitigating factor that the prosecutor introduced the testimony of Dr. Fort, *see* Inf. Resp. at 17, and the prosecutor relied on the testimony throughout his closing argument. *See, e.g., Dow v. Virga*, 729 F.3d 1041, 1050 (9th Cir. 2013) (granting writ of habeas corpus where prosecutor relied on false testimony relevant to the credibility of a key witness and where prosecutor relied on the truth of the false evidence in her closing argument); *Phillips v. Ornoski*, 673 F.3d 1168, 1186 (9th Cir. 2012) (habeas relief merited where false testimony went to the credibility of important witness and where prosecutor relied on the false evidence in closing argument); 2015 Pet. at 39.

The prosecutor questioned the defense experts' reliance on interviews with Mr. McPeters, 17 RT 4251, and argued to the jurors that, "You heard from Dr. Fort about what I would characterize to you as more common sense approach to psychiatric evidence." 17 RT 4251. The prosecutor drew the jurors' particular attention to the negative drug test results, as relayed through Dr. Fort: "You know from the evidence and from the discussions of [] Dr. Fort, if not other people, about the absolutely negative drug screen and alcohol screen regarding this man's blood sample." 17 RT 4251. He continued:

> And so a blood sample taken two or three hours afterwards, if there was P.C.P. present at the time this incident occurred, it would have been there. It would have been there, whatever else was there would have been there. As a matter of fact, what was there did show up. Did show up in the test. That there was no presence of drug[s], and specifically no presence of P.C.P.

17 RT 4252. The prosecutor argued that there was, "Nothing to indicate that this man was under the influence, let alone so under the influence as to be absolutely out of touch with reality and just indiscriminately killing people on the street." 17 RT 4252. The prosecutor appealed to the jurors that, "as reasonable persons the – the value and the common sense of what Dr. Fort has – had to say has to come through." 17 RT 4254. That is, that Mr. McPeters had "no mental problems sufficient to put him out of touch with reality and no mental problems at all in the opinion of Dr. Fort." 17 RT 4254.

The State of California had no qualms about presenting the opinion of Dr. Fort to the jury and standing firmly behind it in the prosecutor's penalty-phase closing argument. 17 RT 4250-56. But, now that Dr. Fort no longer supports his statements at trial, and in fact actively repudiates those statements, the State of California would have this Court conclude that his testimony was of no consequence, and its absence would have made no difference to the outcome of the case. Inf. Resp. at 16-17. Perhaps the clearest illustration of the prejudicial effect of Dr. Fort's improperly admitted false testimony is the trial court's Decision and Statement of Findings and Reasons on Automatic Application for Modification of Jury's Verdict, pursuant to Penal Code Section 190.4. 4 CT 927-36. The trial court found:

> The Court has further examined all of the evidence presented in the penalty phase of the trial by the defendant and personally finds that there was no evidence presented to the court which supported a determination that the defendant's reason was obscured or distorted or diminished by intoxication or [] drugs. The forensic testimony was inconsistent with any finding of drug intoxication and the defendant's witness on this issue strained credulity in his speculation and conjecture.

4 CT 929. The trial court further found:

> The Court notes that testimony was presented in the penalty phase of this trial that suggested that the defendant had injested

23

[sic] phencycladine [sic] prior to the commission of this offense. The Court notes that this testimony was contrary to the forensic evidence presented that there were no drugs in the defendants [sic] system, the defendant's conduct is inconsistent with intoxication, it demonstrates a logical pattern of goal orientated behavior, the choosing of a helpless victim, the robbery of that victim and the deliberate and premeditated intentional murder of that victim for what can only be inferred as done for either the pure thrill of extinguishing the life of a human being or the calculated assassination of a victim because it would eliminate a witness to the crime. Regardless, the court finds no persuasive evidence of any credible substance before this court to support that at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the effects of intoxication.

4 CT 930.

Under this Court's standard, a habeas petitioner is entitled to relief on a false evidence claim "if there is a reasonable probability that, had [the false evidence] not been introduced, the result would have been different." *In re Richards*, 55 Cal. 4th at 961 (quoting *In re Roberts*, 29 Cal. 4th at 742 (internal quotations omitted). Under clearly established federal law, this Court must grant relief if there is "any reasonable likelihood that the false testimony *could* have affected the judgment of the jury." *Jackson*, 513 F.3d at 1076 (quoting *Hayes v. Brown*, 399 F.3d 972, 985 (9th Cir. 2005) (en banc)); *see also Napue*, 360 U.S. at 271. The evidence demonstrates that, under either standard, in the absence of Dr. Fort's improperly admitted testimony, Mr. McPeters would not have been sentenced to death. In California, a capital jury must be unanimous in reaching a verdict of death. Cal. Penal Code § 190.4(b); *see* 3 CT 716. Because there is a reasonable probability that, had Dr. Fort's false testimony not been admitted at the

penalty phase, *one* juror *might* have voted to spare Mr. McPeters's life, this Court must vacate Mr. McPeters's death sentence, or at the least grant him an order to show cause and an evidentiary hearing on this claim.

### III.   CONCLUSION

For reasons set forth in the Petition and above, Mr. McPeters has stated a prima facie case and is entitled to relief from the sentence of death, and to the issuance of an Order to Show Cause, an evidentiary hearing, and a new trial on the question of his guilt or innocence and, if necessary after such phase, on the question of the appropriate punishment.

Dated: January 8, 2016         Respectfully submitted,

HABEAS CORPUS RESOURCE CENTER

By:   _____
Margo Hunter

By:   _____
Joanne Diamond

Attorneys for Petitioner
Ronald Avery McPeters

25

## VERIFICATION

Margo Hunter declares as follows:

I am an attorney admitted to practice in the State of California.   I represent petitioner Ronald Avery McPeters herein, who is confined and restrained of his liberty at San Quentin State Prison.

I am authorized to file this Reply to the Informal Response on Mr. McPeters's behalf.   I make this verification because Mr. McPeters is incarcerated in a county different from that of my law office.   In addition, many of the facts alleged are within my knowledge as much or more than Mr. McPeters's.

I have read the reply and know the contents of the reply to be true.

Executed under penalty of perjury on January 8, 2016, at San Francisco, California.

_____
Margo Hunter

# CERTIFICATE AS TO LENGTH

I certify that this Reply to the Informal Response contains 7,774 words, verified through the use of the word processing program used to prepare this document.

Dated: January 8, 2016          Respectfully submitted,

HABEAS CORPUS RESOURCE CENTER

By: _____

Margo Hunter

27

## PROOF OF SERVICE

1. I am over 18 years of age and not a party to this action. I am a resident of or employed in the county where the mailing took place.

2. My business address is: Habeas Corpus Resource Center, 303 Second Street, Suite 400 South, San Francisco, California 94107.

3. Today, I mailed from San Francisco, California the following document(s):

- Petitioner's Reply to the Informal Response to the Petition for Writ of Habeas Corpus;

4. I served the document(s) by enclosing them in a package or envelope, which I then deposited with the United States Postal Service, postage fully prepaid.

5. The package or envelope was addressed and mailed as follows:

Tami M. Krenzin
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
(916) 445-2394

Counsel for Respondent

As permitted by Policy 4 of the California Supreme Court's *Policies Regarding Cases Arising from Judgments of Death*, counsel intends to complete service on Petitioner by hand-delivering the document(s) within thirty calendar days, after which counsel will notify the Court in writing that service is complete.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 8, 2016

Carl Gibbs